IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EVELYN WILHITE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. |
| v. | § | |
| | § | 4:10-CV-498-K |
| MICHAEL ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Evelyn Wilhite's Brief on Review of the Denial of Benefits by the Commissioner of Social Security (Doc. No. 12), Defendant Michael Astrue's ("the Commissioner") Brief in Response (Doc. No. 13), and Ms. Wilhite's Brief in Reply (Doc. No. 14). The Court has reviewed the briefs on appeal, the administrative record, and the applicable law. Ms. Wilhite has failed to demonstrate that the Commissioner's disability determination was not supported by substantial evidence or that the record was not adequately developed. Therefore, the Commissioner's decision is **AFFIRMED** and Ms. Wilhite's claim is **DISMISSED with prejudice**.

I.  Background

Ms. Wilhite is currently 54 years old and resides in Aledo, Texas. She filed for both Disability Insurance Benefits and Supplemental Security Income on July 31, 2008. Her claims were denied on September 19, 2008, and again on December 19, 2008 upon

reconsideration. Ms. Wilhite requested a hearing before an administrative law judge ("ALJ") on December 30, 2008 to review her claims.

On July 8, 2009, Ms. Wilhite appeared before Judge Ward King, an ALJ. Before the hearing began, Judge King asked Ms. Wilhite if she had a representative. Ms. Wilhite informed Judge King she had terminated representation on June 29, 2008 because she asserted her lawyers did not have her best interests in mind. Judge King offered to postpone the hearing so that she could obtain another representative. He also told Ms. Wilhite there are representatives available who would charge her no up-front costs, meaning they would only be paid if she was successful, and that there was a maximum amount her representative could possibly earn by law. Ms. Wilhite declined all of Judge King's suggestions and requested that the hearing proceed. She stated she was concerned about the Mexican mafia and was unsure if she would make another hearing.

During the hearing, Judge King questioned Ms. Wilhite about her employment history, her physical ability to do work, and her alleged disabilities. Ms. Wilhite submitted personal medical records from 1989 until 2008, covering visits to multiple hospitals and clinics. In the records, Ms. Wilhite has consistently complained of pain in her back, legs, and joints, acid reflux disease, depression, and hypertension. She has primarily attributed these conditions to an automobile accident in 1989 and a slip-and-fall incident while working in 2000. Ms. Wilhite's visits were sporadic, with clusters

mainly in 1989–91, 1995–96, 2000, and 2005–06.

Ms. Wilhite testified that she was bitten by a tick and developed Lyme disease in 1996. She sought treatment in late 1996, but when she presented her concerns to her treating physician at Tarrant County Hospital, the physician ruled out Lyme disease. Rec. at 487. She testified she was not tested for Lyme disease in 1996 because she couldn't afford the test. Nine years later, Ms. Wilhite visited Dr. Larry Sharp at the Fibromyalgia and Fatigue Center in Fort Worth, Texas. Dr. Sharp ran two tests for Lyme disease in 2005, which look for different types of Lyme disease antibodies. The first, which tests for long-term antibodies according to Ms. Wilhite, was negative. The second, which Ms. Wilhite states looks for short-term antibodies, was indeterminate. Based on these tests and Ms. Wilhite's complaints of nausea, fever, and fatigue, Dr. Sharp diagnosed Ms. Wilhite with Lyme disease. In subsequent hospital visits, Ms. Wilhite self-reported a history of Lyme disease. Rec. at 617, 630. Though referenced by Ms. Wilhite in her brief, Pl. Brief at 6 n.3, this court has found no other physician in Ms. Wilhite's medical records that has confirmed Dr. Sharp's diagnosis of Lyme disease.

While explaining her history of Lyme disease during the hearing, Ms. Wilhite mentioned she had visited a Mental Health Mental Retardation ("MHMR") office several times. Rec. at 46–48. Judge King stopped Ms. Wilhite and asked several questions about her experience with MHMR, including how many times she had visited

and for how long she had been treated. *Id*. at 47–49. Ms. Wilhite stated she was treated for mild depression and prescribed medications. Rec. at 49. Ms. Wilhite repeatedly denied any mental problems, *id*., and stated anything in her medical records from MHMR that indicated otherwise was a lie, *id*. at 47.

Judge King issued an opinion denying Ms. Wilhite's requests for Disability Insurance Benefits and Supplemental Security Income on November 20, 2009. She appealed Judge King's decision on January 25, 2010, and the Appeals Council denied review on March 27, 2010. Once the Appeals Council denied review, Judge King's determination became the decision of the Commissioner.

Ms. Wilhite filed this complaint in federal district court in Fort Worth, Texas on July 16, 2010, seeking review of the Commissioner's decision, as articulated by Judge King. In her brief on appeal, Ms. Wilhite identifies two issues:

(1) Is the Commissioner's disability determination is supported by substantial evidence? and

(2) Did Judge King satisfy his heightened duty to develop the record when Ms. Wilhite appeared for the administrative hearing unrepresented by counsel?

## II. Legal Standard

Judicial review in social security cases is limited to (1) whether or not the proper legal standards were applied in the underlying proceeding and (2) whether or not the Commissioner's decision is supported by "substantial evidence." *Newton v. Apfel*, 209

F.3d 448, 452 (5th Cir. 2000). Substantial evidence is the amount of relevant evidence a reasonable mind would accept to support a conclusion. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). It is more than a mere scintilla and less than a preponderance. *Id*. So long as the Commissioner's decision is supported by substantial evidence, it must stand; the court may not substitute its own judgment for that of the Commissioner. *Newton*, 209 F.3d at 452. The Commissioner's decision must stand or fall with the reasons set forth in the ALJ's opinion. *Id*. at 455.

## III. Analysis

### A. Is the Commissioner's disability determination supported by substantial evidence?

Ms. Wilhite first contends that the Commissioner's disability determination, as embodied in Judge King's opinion denying benefits, is not supported by substantial evidence. A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a) (2011). "Disabled" means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to last at least twelve months. 42 U.S.C. § 423(d)(1)(A) (2011); *Hollis v. Bowen*, 832 F.2d 865, 867 (5th Cir. 1987). The Commissioner applies a five-step process to determine disability:

(1) Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.

(2) Is the claimant's claimed impairment "severe," one which significantly limits the claimant's physical or mental ability to do

> basic work? This is made solely on the basis of medical evidence.

> (3) Does the claimant's impairment meet or equal in severity certain impairments described in Appendix 1 of the regulations?

> (4) If an impairment is "severe" and covered by the regulations, can the claimant perform work he or she has in the past despite the limitations?

> (5) If the claimant does not have the residual functional capacity to perform past work, can the claimant perform other gainful and substantial work in the economy?

20 C.F.R. § 404.1520; *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007). The burden is on the claimant to show he or she is disabled during the first four steps of the analysis. *Id*. at 448. At the fifth step, the burden shifts to the Commissioner to show other work exists in the national economy that the claimant can perform. *Id*.

Judge King conducted the five-step analysis described above in his opinion. Rec. at 15–16. There is no dispute that Judge King selected the appropriate law to be applied. Ms. Wilhite argues that Judge King's decision was not supported by substantial evidence.

### 1. Was Judge King obligated to contact Dr. Sharp following the hearing?

Ms. Wilhite asserts Judge King was obligated to contact Dr. Sharp if Judge King concluded the record before him was incomplete. *Newton*, 209 F.3d at 458. However, the Commissioner points to the next paragraph where the panel states reversal is only appropriate when the plaintiff can show prejudice. *Id*. Prejudice in this context means

a showing that additional evidence would have been produced and "that the additional evidence might have led to a different decision." *Id*. The plaintiff in *Newton* demonstrated the evidence on which the ALJ relied was incomplete and that it was possible to fill in those gaps if the ALJ had contacted the treating physician's again. *Id*.

That is not the case presented here. Ms. Wilhite states Dr. Sharp could provide further interpretations of the Lyme disease antibody tests, his impressions from Ms. Wilhite's medical history, and his overall medical diagnosis. Pl. Reply at 2–3. None of those would provide new evidence that might have led to a different decision. *Newton*, 209 F.3d at 458. Judge King considered Dr. Sharp's opinions and concluded his diagnosis was speculative after reviewing all of Dr. Sharp's files. Rec. at 20. Ms. Wilhite has presented nothing that persuades this court that more information from Dr. Sharp might have changed Judge King's mind.

### 2. Did Judge King properly evaluate Dr. Sharp's opinion?

Ms. Wilhite also argues Judge King improperly evaluated Dr. Sharp's opinion as a treating physician. In support, Ms. Wilhite again points this court to *Newton v. Apfel*, 209 F.3d 448, 455–58 (5th Cir. 2000). Later in *Newton*, the Fifth Circuit stated the diagnosis of a treating physician "should be accorded great weight in determining disability." *Id*. at 455. However, the court goes on to recognize a treating physician's opinion may be rejected or given little to no weight if the evidence supports a contrary conclusion. *Id*. at 455–56.

Before an ALJ may reject or give little weight to a treating physician's opinion, the ALJ must consider all the factors of 20 C.F.R. § 404.1527(d). *Newton*, 209 F.3d at 456. These factors include the length of treatment, the physician's specialty, and support for the opinion within the medical record. *See* 20 C.F.R. § 404.1527(d)(2) (2011). In his opinion, Judge King acknowledged this requirement, Rec. at 19, and applied these factors, *id*. at 20. Though he doesn't identify them individually, Judge King was plainly considering these factors while determining the amount of weight to accord Dr. Sharp's opinion. Rec. at 20 ("[Dr. Sharp's] opinion concerning Ms. Wilhite's functional capacity is mainly speculative; his conclusions, at best, are internally inconsistent with a conspicuous lack of objective clinical findings.") Judge King reached these conclusions after considering almost twenty years of medical records and Ms. Wilhite's live testimony at the hearing. This court finds Judge King identified and applied the correct legal standard when weighing Dr. Sharp's opinion.

Ms. Wilhite has failed to show Judge King erred when he did not directly contact Dr. Sharp or that Judge King improperly evaluated Dr. Sharp's opinion as a treating physician. Therefore, this court finds the Commissioner's decision is supported by substantial evidence. *Newton*, 209 F.3d at 452.

**B.      Did Judge King satisfy his heightened duty to develop the record, considering Ms. Wilhite appeared at the hearing without counsel?**

In her second point on appeal, Ms. Wilhite asserts Judge King did not fulfill his duty to develop the record, taking into account the fact that she appeared for the hearing

unrepresented by counsel, and cites *Kane v. Heckler*, 731 F.2d 1216, 1219–20 (5th Cir. 1984). In *Kane*, the Fifth Circuit stated "the ALJ's basic obligation to develop a full and fair record rises to a special duty when an unrepresented claimant unfamiliar with the hearing procedures appears before him." *Id*. at 1219 (citation omitted). The court in *Kane* went on to state that reversal and remand is not required unless the claimant shows he or she was prejudiced, meaning the claimant could and would have produced evidence that might have altered the result. *Id*. at 1220.

> **1. Was Judge King obligated to obtain additional medical records alluded to by Ms. Wilhite during the hearing?**

Ms. Wilhite argues Judge King was put on notice of the existence of other medical records during the hearing and that he was obligated to obtain and evaluate those records before issuing his decision. Initially, it's important to note that Ms. Wilhite told Judge King he had all the documents he needed to decide her case. Rec. at 35. When she alluded to the existence of other records during her testimony, Rec. at 48, Judge King asked her to submit those records so that he may consider them in reaching his decision. Rec. at 60–61. Nowhere in the transcript of the hearing on July 8, 2009 does Ms. Wilhite ask Judge King to consider or obtain medical records that were not produced.

When Ms. Wilhite stated that she had visited an office of Mental Health Mental Retardation ("MHMR") several times and had been told she only had a mild case of depression, *id*. at 46–49, Judge King questioned her about when she went and for how

long she was treated, *id*. at 47–48. Ms. Wilhite specifically denied she had a mental impairment, Rec. at 49, and told Judge King the records from her visits stated she had no mental health problems at all. *Id*. at 47. Ms. Wilhite argues on appeal that her answers to these questions could not be trusted because individuals with mental health problems frequently deny them. Pl. Reply at 7–8. While that may be true, Ms. Wilhite has pointed to nothing in her medical records that contradicted her protestations that she had no mental impairments: no psychological evaluations, no visits to other doctors for mental health problems. When faced with this situation, Judge King accepted Ms. Wilhite's answers at face value.

Ms. Wilhite compares her situation to the one presented in *Watson v. Astrue*, No. 06-1784, 2008 WL 4072831 (W.D. La. July 1, 2008). In *Watson*, the magistrate recommended the case be remanded to the ALJ for findings regarding the plaintiff's mental health. *Id*. at *6. The plaintiff in *Watson* had a history of mental illness, supported by a prior claim for disability based on a mental impairment. *Id*. The magistrate also found it important that the ALJ noted the prior claim concerning mental impairment was not included in the record and did not attempt to retrieve and review the prior claim. *Id*. In contrast to *Watson*, Ms. Wilhite has no prior claim for disability based on a mental impairment. Also, the only indication that Ms. Wilhite may have had a mental impairment was her testimony about visits to MHMR, which she specifically denied in the hearing had anything to do with mental problems. Rec. at 49. This court

finds Judge King was not obligated to obtain the additional MHMR records alluded to by Ms. Wilhite during the hearing. *See Stansel v. Shalala*, 41 F.3d 664, *2 (5th Cir. 1994) (extensive questioning by ALJ and offer to claimant of opportunity to provide more evidence met burden).

### 2. Was Judge King obligated to order a consultive evaluation for Ms. Wilhite?

Ms. Wilhite also argues Judge King should have ordered a mental evaluation of her, given her testimony at the hearing and her medical records, to meet his heightened duty to develop the record. A consultation at government expense may be required if the record establishes that such an examination is necessary for the ALJ to make a disability determination. *Haywood v. Sullivan*, 888 F.2d 1463, 1472 (5th Cir. 1989). The decision to order an evaluation is discretionary, but that discretion is narrowed when the claimant raises a reasonable suspicion that one is necessary for the ALJ to discharge his duty of full inquiry. *Id*.

In this case, Ms. Wilhite argues there were three examples that should have prompted an evaluation: (1) she claimed she was being followed by the Mexican mafia because she had turned in one of them and that the Department of Justice was providing her protection, Rec. at 32–33; (2) that she had checked into a women's shelter in 1996 because she believed her ex-boyfriend was trying to kill her, Rec. at 480; and (3) she noted in her termination letter to her attorneys that she was copying Attorney General Eric Holder, Rec. at 113.

A single line on one page of Ms. Wilhite's voluminous medical records that she was seeking protection from an ex-boyfriend does not raise suspicion of mental impairments. Neither does a footnote in her termination letter that reads "cc: Eric Holder Attorney General." The only example that gives this court pause is Ms. Wilhite's statement that she was being trailed by the Mexican mafia and was receiving protection from the U.S. Department of Justice. However, Judge King's decision was discretionary, *Haywood*, 888 F.2d at 1472, and this court may not substitute its judgment for that of the Commissioner, so long as the decision is supported by substantial evidence, *Newton*, 209 F.3d at 452. There are examples throughout Judge King's opinion where he expresses his doubts concerning Ms. Wilhite's credibility after questioning her for over 30 minutes at the hearing. *See* Rec. at 19–20.

In *Martinez v. Astrue*, No. C-10-104, 2010 WL 4923468, *9 (S.D. Tex. Oct. 28, 2010), the magistrate judge found the necessary suspicion was raised when the claimant's treating physician had advised further testing was required to determine the extent of the claimant's impairments. In *Moreno v. Barnhart*, No. Civ. SA-02-CA-1126-XR, 2003 WL 22244971, *3 (W.D. Tex. Sept. 3, 2003), the district court found no consultation was necessary when no treating physicians had recommended further evaluation, medical records discussing the claimant's impairment were placed in the record, and the ALJ explicitly considered the records. Here, there were no recommendations from treating physicians that called for further tests. In fact, there

were no mental health evaluations at all in the medical records filed with Judge King. While there may have been MHMR records of Ms. Wilhite's visits, Ms. Wilhite explicitly told Judge King that those were not helpful and "full of lies." Rec. at 48.

After evaluating the transcript of the July 8, 2009 hearing, Judge King's opinion, and Ms. Wilhite's medical records, this court concludes Judge King met his heightened duty to develop the record. Even if Judge King had failed to meet his heightened duty to develop the record, Ms. Wilhite has not demonstrated prejudice by proffering evidence that would have been produced. *See Kane*, 731 F.2d at 1220 (claimant is required to proffer evidence that would have been produced at the district court).

## IV. Conclusion

Ms. Wilhite has failed to demonstrate that Judge King's disability determination was not supported by substantial evidence or that he failed to adequately develop the record. Therefore, the Commissioner's decision is **AFFIRMED** and Ms. Wilhite's claim is **DISMISSED with prejudice**.

**SO ORDERED.**

Signed April 14th, 2011

_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE